UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60825-SINGHAL/VALLE

JEANNIE MORENO,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Commissioner of the
Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 20) and Defendant's Motion for Summary Judgment (ECF No. 22) (together, "the Motions"). U.S. District Judge Raag Singhal has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 9).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 23), Plaintiff's Reply (ECF No. 24), and being otherwise fully advised on the matter, the undesigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

## I.      PROCEDURAL HISTORY

In February 2020, Plaintiff applied for disability insurance and supplemental security income benefits under the Social Security Act (the "Act"), 42 U.S.C § 401 *et seq.*, alleging a disability onset

date of February 3, 2020.  (R. 59, 383-403, 404-05).[1]  Plaintiff's applications were denied initially and again upon reconsideration.  (R. 131-32, 163-64).  Thereafter, Plaintiff requested a hearing, which was held on November 23, 2020, before ALJ Mary Brennan.  (R. 275-77, 279-80, 298-307).  After the hearing and prior to rendering a decision, ALJ Brennan requested that a Medical Expert ("ME") review the medical evidence and complete interrogatories and a work-related activities assessment regarding Plaintiff's impairments.  (R. 16, 1837).  Upon ALJ Brennan's retirement, ALJ Valencia Jarvis was assigned the case.  (ECF No. 20 at 2).  At Plaintiff's counsel's request after receiving the ME's report, ALJ Jarvis held a supplemental hearing on July 7, 2021.  (R. 16, 35-56, 499).  Plaintiff appeared with counsel and testified at the initial and supplemental hearings.  (R. 41-49, 62-80).  A Vocational Expert ("VE") also testified at both hearings.  (R. 49-55, 81-86).  On August 3, 2021, ALJ Jarvis issued a decision denying Plaintiff's applications and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 15-27).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.    STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r*

---

[1] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer.  *See* (ECF Nos. 12, 16).

*of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for disability insurance benefits) and § 1382 (standard for supplemental security income benefits). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?
(3)     Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4)     Is the person unable to perform his or her former occupation?
(5)     Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4) (evaluation process for DIB), 416.920(a)(4) (evaluation process for SSI). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004), *abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-10507, 2022 WL 3448090 (11th Cir. 2022). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239.  The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a VE, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id.* at 1239-40.

### III.   THE ALJ'S DECISION

On August 3, 2021, after reviewing the evidence and conducting the sequential analysis, ALJ Jarvis concluded that Plaintiff "has not been under a disability within the meaning of the [Act] from February 3, 2020, through the date of this decision."  (R. 16, 26-27).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 3, 2020, the alleged onset date.  (R. 18).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: myasthenia gravis, rheumatoid arthritis, fibromyalgia, diabetes mellitus, neuropathy, left eye double vision, and obesity.[2]  *Id.*

---

[2] Plaintiff does not challenge the ALJ's findings that Plaintiff's hypertension, partial rotator cuff tear, Hashimoto's thyroid disease, and anxiety were not severe impairments.  *See generally* (ECF No. 20); *see also* (R. 18-19).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings.  (R. 19). Specifically, the ALJ found that Plaintiff did not meet the following Listings:  2.02 (central visual acuity); 2.03 (contraction of the visual field); 11.12 (myasthenia gravis) or 11.22 (motor neuron disorders other than ALS); 11.14 (peripheral neuropathy); and 14.09 (inflammatory arthritis).  (R. 20).  The ALJ also found that Plaintiff's fibromyalgia, chronic fatigue syndrome, diabetes, and obesity did not meet or equal any of the Listings.  (R. 20-21).

At Step 4, the ALJ determined that Plaintiff has the RFC to perform light work, with various exertional and non-exertional limitations.  (R. 21).  In particular, the ALJ limited Plaintiff to: (i) standing and walking for 4 hours; (ii) never climbing ladders, ropes, and scaffolds; (iii) occasional climbing ramps and stairs; (iv) occasional balancing, kneeling, and crawling; (v) frequent stooping and crouching; (vi) frequent handling and fingering; (vii) occasional left eye peripheral vision; (viii) avoiding high, exposed places; and (ix) occasional exposure to moving mechanical parts.  *Id.*  Based on this RFC, the ALJ concluded that Plaintiff was able to perform her past relevant work as an administrative assistant (a sedentary job with an SVP of 7) and sales manager (a sedentary job with an SVP of 8).  (R. 26).  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. 26-27).

## IV.   DISCUSSION

In the Motion, Plaintiff raises two primary arguments.  First, Plaintiff argues that the ALJ erred by "summarily" rejecting the ME's opinion that Plaintiff met the medical criteria of several Listed impairments and failing to more fully develop the record regarding whether Plaintiff met or equaled a Listing.[3]  (ECF No. 20 at 3-8).  Second, Plaintiff argues that even if the ALJ correctly found

_____

[3] Plaintiff defends only the ME's opinion that Plaintiff met the criteria for Listing 14.09.  (ECF No. 20 at 6).  Although Plaintiff's arguments regarding other Listings could be deemed waived, the undersigned will nonetheless address these for completeness.  *See N.L.R.B. v. McClain of Georgia,*

that Plaintiff did not meet or equal a Listings, the ALJ's RFC determination is nonetheless flawed

because the ALJ failed to: (i) limit Plaintiff to occasional (as opposed to frequent) reaching, handling,

and fingering, as the ME opined (*Id.* at 8-13); (ii) conduct a function-by-function analysis (*Id.* at 15-

16); and (iii) consider the cumulative effects of Plaintiff's multiple impairments (*Id.* at 17-19).   For

the reasons discussed below, however, the undersigned finds that the ALJ applied the proper legal

standards and that the ALJ's Decision is supported by substantial evidence.   Accordingly, the ALJ's

Decision should be affirmed.

### A.  The ALJ Satisfied Her Duty to Develop a Full and Fair Record

An ALJ "has a basic obligation to develop a full and fair record."  *Ellison v. Barnhart*,

355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).

Nonetheless, before a Court can find that a claimant's right to due process has been violated to such

an extent that the case must be remanded for further development of the record, the claimant must

show the existence of evidentiary gaps that result in unfairness or clear prejudice to the claimant.

*Graham*, 129 F.3d at 1423; *see Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (indicating

remand is necessary only where "the record reveals evidentiary gaps which result in unfairness or

'clear prejudice'") (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A July 1981)).[4]

Accordingly, an ALJ is not required to obtain medical expert testimony when the record contains

sufficient evidence for the ALJ to make an informed decision.  *See Wilson v. Apfel*, 179 F.3d 1276,

1278 (11th Cir. 1999) (holding ALJ was not obligated to seek independent, additional expert medical

---

*Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (citation omitted) (arguments raised "in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived"); *Moye v. Saul*, No. 19-CV-60332, 2020 WL 1433280, at *10 (S.D. Fla. Mar. 24, 2020) (same).

[4] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

testimony because the record was sufficient for ALJ to arrive at a decision).  Ultimately, a claimant bears the burden of proving that she is disabled and is responsible for producing evidence in support of her claim.  *Ellison*, 355 F.3d at 1276; *see* 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1) (claimant must furnish medical and other evidence that the Commissioner can use to reach conclusions about medical impairment(s)); 20 C.F.R. §§ 404.1512(a)(2), 416.912(a)(2) (claimant must provide medical evidence showing an impairment(s) and its severity).

Here, after the initial hearing, the ME reviewed the medical record to answer interrogatories and complete a work-related assessment of Plaintiff's impairments.  (R. 1840-47).  After receiving the ME's responses, Plaintiff's counsel requested a supplemental hearing, which was held on July 7, 2021 before ALJ Jarvis.  (R. 499).  In the Motion, Plaintiff complains that the ALJ failed to recontact the ME or call the ME to testify at the supplemental hearing "to obtain clarification of [the ME's] opinion evidence," thereby purportedly breaching the ALJ's duty to develop a full record.  (ECF No. 20 at 6).

Plaintiff's argument is unpersuasive for several reasons.  First, counsel's request for a supplemental hearing specifically asked for "the opportunity to cross-examine a [V]ocational [E]xpert with the limitations set forth by the Medical Expert."  (R. 499).  The ALJ provided counsel with this opportunity.  *See* (R. 49-55) (the ALJ's examination and counsel's cross-examination of the VE regarding the limitations contained in the ME's opinion).  Nothing more was requested or required.

Second, at no time during the administrative hearing did Plaintiff complain of any evidentiary gaps or missing medical evidence, undercutting Plaintiff's arguments that the ALJ failed to develop the record.  Furthermore, as discussed more fully in Section IV.B., below, the record was sufficient for the ALJ to make an informed decision regarding whether Plaintiff's impairments met or equaled a Listing, without needing to recall the ME.  The ALJ accurately summarized the evidence regarding

Plaintiff's multiple impairments.  (R. 19-25).  Thus, because there was no evidentiary gap, the ALJ was not required to recontact the ME or develop the record further.  *See Imberman v. Kijakazi*, No. 20-CV- 61998, 2023 WL 2815081, at *4 (S.D. Fla. Jan. 31, 2023), *report and recommendation adopted*, 2023 WL 2809541 (S.D. Fla. Apr. 6, 2023) (finding that the ALJ was not required to obtain additional expert testimony when the record contained sufficient evidence for the ALJ to make an informed decision); *Taylor on Behalf of Estate of Taylor v. Berryhill*, No. 17-CV-61402, 2018 WL 5098961, at *11 (S.D. Fla. Aug. 10, 2018), *report and recommendation adopted sub nom.*, *Taylor v. Soc. Sec. Admin.*, 2018 WL 4690793 (S.D. Fla. Oct. 1, 2018) (noting that ALJ is not required to seek expert testimony when record contains opinions from several physicians with sufficient evidence for ALJ to make an informed decision); *cf. Guerrier on behalf of L.C. v. Saul*, No. 18-CV-63090, 2020 WL 1034371, at *7 (S.D. Fla. Feb. 14, 2020) (concluding that evidentiary gap required remand for additional testing to determine if claimant met listing), *report and recommendation adopted sub nom.*, *Guerrier on behalf of L.C. v. Acting Comm'r of Soc. Sec.*, 2020 WL 1033405 (S.D. Fla. Mar. 2, 2020).

In sum, although the ALJ has a basic duty to develop a full and fair record, Plaintiff bears the burden of proving that she is disabled and producing evidence to support her claim.  *Ellison*, 355 F.3d at 1276.  Here, Plaintiff failed to meet that burden.  Plaintiff also failed to establish any evidentiary gap in the record that resulted in unfairness or clear prejudice to Plaintiff.  *See, e.g.*, *Moye*, 2020 WL 1433280, at *10 (concluding that plaintiff failed to show prejudice by absence of records or explain how these might have affected the ALJ's decision); *see also Bryan v. Saul*, No. 19-CV-63164, 2021 WL 707594, at *11 (S.D. Fla. Feb. 6, 2021), *report and recommendation adopted*, 2021 WL 705776 (S.D. Fla. Feb. 23, 2021) (noting that mere speculation that further development of the record might produce evidence favorable to Plaintiff is not enough); *Espaillat v. Saul*, No. 19-CV-61703, 2020 WL 6808806, at *17-19 (S.D. Fla. July 20, 2020), *report and recommendation adopted*, 2020 WL

5087030 (S.D. Fla. Aug. 28, 2020) (denying claimant's motion for remand where there were no evidentiary gaps and ALJ satisfied duty to develop full and fair record).  Accordingly, the undersigned finds no error in the ALJ's decision not to recontact the ME or call the ME to testify at the supplemental hearing.

### B.  The ALJ Properly Determined that Plaintiff Did Not Meet or Equal a Listing

Next, Plaintiff argues that the ALJ erred in rejecting the ME's opinion that Plaintiff met several Listings.[5]  (ECF No. 20 at 3-4).  According to Plaintiff, the ALJ "summarily rejected" the ME's medical opinion that Plaintiff met these Listings, without addressing the required consistency and supportability factors in 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  *Id.* at 2, 4-5.

*1.  Legal Standards*

At Step 3 of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals an impairment in the Listings.  20 C.F.R. §§ 404.1520(d), 416.920(d).  The Listings specify certain physical and mental impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525(a), 416.925(a).  The Listings serve to "streamline[] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

A claimant bears the burden of proving that her impairments meet or equal a Listing.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir.1991); *Imberman*, 2023 WL 2815081, at *5; *Estate of White v. Saul*, No. 19-CV-61745, 2020 WL 5351064, at *12 (S.D. Fla. Aug. 26, 2020), *report and*

---

[5] According to the ME, Plaintiff met the following Listings:  9.00(B)(2) (thyroid gland disorder); 9.00(B)(5) (diabetes Type 1); 11.12 (myasthenia gravis); 11.22 (neuropathy); 14.00 (immune system disorders, including rheumatoid and inflammatory arthritis).  (R. 1840, 1841).

*recommendation adopted*, 2020 WL 5291966 (S.D. Fla. Sept. 4, 2020). To "meet" a Listing, the claimant must provide medical evidence documenting that her impairments meet the specific criteria of the Listing and its duration requirement. 20 C.F.R. §§ 404.1525(c), 416.925(c). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the criteria" of a Listing. 20 C.F.R. §§ 404.1526(a), 416.926(a). If the claimant's impairments meet or equal a Listing, the claimant will be found disabled and the sequential evaluation will end at Step 3. 20 C.F.R. §§ 404.1520(d), 416.920(d).

   *2. The ALJ Properly Evaluated the ME's Opinion at Step 3*

   In response to Interrogatory No. 6, the ME identified Plaintiff's medical impairments by cursory reference to the Listings for diabetes mellitus Type 1, rheumatoid arthritis, myasthenia gravis, hypothyroid, and autoimmune diseases (i.e., Hashimoto's thyroiditis, diabetes mellitus Type 1, and rheumatoid arthritis). (R. 1840). In response to Interrogatories 7 and 8, the ME concluded that these impairments met the previously referenced Listings. (R. 1841). In addition, in the Medical Statement of Ability to Do Work-Related Activities attached to the Interrogatories, the ME opined that Plaintiff needed a cane for walking and was limited to occasional reaching, handling, and fingering. (R. 1844, 1845). To support these limitations, the ME vaguely referenced Plaintiff's previous left foot fracture and weak muscles caused by myasthenia gravis and rheumatoid arthritis. (R.1844, 1845).

   In finding that Plaintiff's impairments do not meet or equal a Listing at Step 3, the ALJ compared the record evidence against the specific medical criteria necessary to meet each of the Listings, as follows:

> The undersigned has considered all of the claimant's impairments individually and in combination but can find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the listings. Since the claimant shows no evidence of an impairment which meets or equals the criteria of a listed impairment or combination of impairments equivalent in severity (not in mere

numbers) to a listed impairment, disability cannot be established on the medical facts alone. (20 CFR 404.1520(d) and 416.920(d)).

The claimant's vision does not meet or equal listing 2.02 Loss of Central Visual Acuity, because the remaining vision in the better eye after best correction is not 20/200 or less. The claimant's vision does not meet or equal listing 2.03 Contraction of the visual field in the better eye, because the record does not demonstrate the widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or an MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field or a visual field efficiency of 20 percent or less, determined by kinetic perimetry.

The claimant's impairments do not meet or equal listings 11.12 or 11.22 because the record does not show A. Disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. OR B. Bulbar and neuromuscular dysfunction resulting in: acute respiratory failure requiring invasive mechanical ventilation; or need for supplemental enteral nutrition via a gastrostomy or parenteral nutrition via a central venous catheter. Or C. marked limitation in physical functioning and in one of the areas of mental functioning.

The claimant's peripheral neuropathy does not meet listing 11.14, because the record does not demonstrate A. disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or B. marked limitation in physical functioning and in one of the following understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. The claimant's arthritis does not meet or equal listing 14.09 Inflammatory arthritis. The record does not demonstrate: A. Persistent inflammation or persistent deformity of one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively or one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively; OR B. Inflammation or deformity in one or more major peripheral joints; OR C. Ankylosing spondylitis; OR D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs and one of the following at the marked level: limitation of activities of daily living; limitation in maintaining social functioning; and limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace[.]

Fibromyalgia and chronic fatigue syndrome cannot meet a listing in appendix 1 because they are not listed impairments. At this step, therefore, it must be determined whether they medically equal a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether they medically equal a listing in combination with at least one other medically determinable impairment (SSR 12-2p and 14-1p). Here, the evidence fails to demonstrate that the claimant's fibromyalgia and chronic fatigue syndrome medically equals a listing.

There is no listing for diabetes. Instead, any symptoms are evaluated under the affected body system: the combined effects of diabetes mellitus and another impairment(s) can be greater than the effects of each of the impairments considered separately. The undersigned has considered all work-related physical and mental limitations, whether due to the claimant's diabetes mellitus, other impairment(s), or combination of impairments (see SSR 14-2p). The symptoms of the claimant's diabetes do not meet or equal any listing.

The claimant's obesity does not meet or equal a listing. It is important to note that there is no listing for obesity. (See SSR 19-2p). Instead, because there is no listing, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. We will find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. (SSR 19-2p). The claimant does not have another impairment that meets a listing, thus obesity does not "meet" a listing.

(R. 20-21).

Furthermore, the ALJ explained her rationale for finding that the ME's opinion was not persuasive.  The ALJ wrote:

Medical [E]xpert David Glickman, D.O. provided a medical opinion on January 18, 2021. (Ex. B25F). Dr. Glickman opined the claimant's impairments meet a listing. He said the claimant could lift and carry up to 20 pounds; stand 3 hours at a time up to 4 hours total; walk 1 hour at a time up to 3 hours total; and sit 5 hours at a time up to 6 hours total. The claimant needs a cane to ambulate. The claimant can never reach overhead with the right arm and can do so occasionally with the left. She can occasionally reach other directions and handle; she can frequent finger and feel. She can frequently operate foot controls. The claimant can never climb ladders, ropes, and scaffolds; never keel, crouch, or crawl; and can occasionally balance and stoop. (Ex. B25F).

The opinion of Dr. Glickman is not persuasive. First and most important, he opines the claimant meets several listings; however, it appears Dr. Glickman does not understand what meeting a listing requires. He has confused medically determinable impairments with the listings. While the claimant has several medically determinable impairments, Dr. Glickman does not provide any explanation as to why or how these impairments meet a listing, which is a different analysis. Furthermore, Dr. Glickman provides a detailed residual functional capacity, which is inconsistent with the limitations necessary to meet a listing. Accordingly, the undersigned is unable to accept his opinion regarding the listings. It is unsupported and inconsistent. Dr. Glickman's residual

functional capacity is not persuasive for other reasons. He suggests limits on manipulation that are not supported by exam findings. Strength is 5/5 in the extremities. Sensation is intact to pinprick throughout. (Ex. B27F/5-7, 24-26). Neck is supple with full range of motion. Motor tone is normal. There is no weakness. (Ex. B18F/7-10). He notes a cane is required, but that is never reported in the record. Indeed, the claimant's gait is consistently noted to be normal. (Exs. B18F/7-10, 44). The other postural and environmental limits are not supported. Dr. Glickman does not provide any objective clinical findings to support these limits and appears to have confused possible effects of identified medically determinable impairments with actual exam findings.

(R. 25).

Against this legal and factual backdrop, the undersigned finds that the ALJ properly evaluated the ME's opinion at Step 3. As the ALJ correctly found, the ME's opinion is "unsupported and inconsistent." (R. 25). In discussing the supportability factor, the ALJ explained that the ME did not support his opinions with explanations or objective clinical findings. (R. 25); *see* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) the more persuasive the medical opinions will be."). Indeed, the ME did not explain why or how Plaintiff's impairments met or equaled a Listing. (R. 25, 1840-42). Additionally, the ME did not cite to objective clinical findings to support the manipulative limitations in his opinion. (R. 25, 1843-46). Thus, the ME's opinion is not supported. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

As to the consistency factor, the ALJ found that the ME's opinions were not consistent with examination findings. (R. 25); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). In this regard, the ALJ noted that Plaintiff's strength was 5/5 in the extremities, and her sensation to pinprick was intact throughout. (R. 25, 1056, 1059, 1938, 1957-59). Plaintiff's neck was supple with full range of motion; her motor

tone was normal; and there was no weakness.  (R. 25, 1056, 1059, 1067, 1072, 1076, 1079, 1081, 1091, 1102, 1938).  Additionally, while the ME noted that Plaintiff needed a cane, the medical record reflects normal gait without mention of a cane.  (R. 25, 1067, 1091); *see* (ECF No. 20 at 3-13) (Plaintiff's silence regarding cane use); *but see* (R. 1940) (3/2/21 Memorial Healthcare System ("MHS") ER treatment note reflecting antalgic gait following foot fracture, but no cane).

Furthermore, the responsibility for deciding whether an impairment meets or equals a Listing rests with the ALJ.  20 C.F.R. §§ 404.1526(e)(3), 416.926(e)(3); *Imberman*, 2023 WL 2815081, at *6.  Thus, Plaintiff's argument that the ALJ impermissibly relied on her own lay interpretation of the medical evidence is without merit.  *See* (ECF No. 20 at 5).  In addition, under the applicable regulations, statements about whether a claimant meets or equals a Listing are neither valuable nor persuasive on the issue of whether a claimant is disabled and the ALJ need not provide any analysis of how she considered such evidence.  20 C.F.R. §§ 404.1520b(c)(3)(iv), 416.920b(c)(3)(iv); *see also Lasauna H. v. Kijakazi*, No. 21-CV-00356-VMC, 2022 WL 17541770, at *2 (N.D. Ga. Sept. 22, 2022) (affirming ALJ's assessment where law provides that treating physician's opinion on an issue reserved for the Commissioner is "neither valuable nor persuasive to the issue of whether an applicant is disabled.").  Simply put, the ALJ is not required to "mechanically recite the evidence leading to her [Listings] determination."  *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (ALJ's implicit finding that claimant did not meet a Listing was clear where ALJ considered relevant law and evidence); *Imberman*, 2023 WL 2815081, at *6 (finding that the ALJ is not required to mechanically recite evidence leading to Listing determination); *Estate of White*, 2020 WL 5351064, at *12 (same).

Moreover, to meet a Listing, a claimant must not only have a diagnosis specified in the Listings, but must also provide medical reports documenting that claimant's conditions meet the specific severity criteria of the Listings and the duration requirement.  20 C.F.R. §§ 404.1525(c)(3),

416.925(c)(3); *Moye*, 2020 WL 1433280, at *11.  An impairment that meets only some of the Listing requirements, no matter how severe, does not qualify.  *Moye*, 2020 WL 1433280, at *11.  Here, despite Plaintiff's diagnoses of and subsequent treatment for diabetes mellitus Type 1, rheumatoid arthritis, neuropathy, Hashimoto's thyroiditis, and myasthenia gravis, Plaintiff failed to meet her burden of showing that any of her impairments met or equaled the specific medical criteria in a Listing. *Estate of White*, 2020 WL 5351064, at *12 (noting that it is claimant's burden to demonstrate that her impairment meets or equals a Listing impairment).  Unlike the ME, the ALJ carefully compared the medical evidence in the record against the medical criteria necessary to meet each Listing and properly found that Plaintiff's impairments did not rise to the Listing level.

### C.  The ALJ Properly Determined Plaintiff's RFC

A VE testified at the initial and supplemental hearings and answered several hypothetical questions posed by the ALJ and Plaintiff's counsel.  (R 49-55, 80-86).  Initially, the VE identified Plaintiff's past relevant work as an administrative assistant (a sedentary job with an SVP of 7) and sales manager (a sedentary job with an SVP of 8).  (R. 50, 81).  Relevant to the Motions, the ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and previous work experience could perform Plaintiff's past relevant work if the individual was limited to light work with the following exertional and non-exertional restrictions: (i) sit for 6 hours; (ii) stand and walk for 4 hours; (iii) occasional lifting and carrying 20 pounds and frequent lifting and carrying 10 pounds; (iv) never climbing ladders, ropes, and scaffolds; (v) occasional climbing ramps and stairs; (vi) occasional balancing, kneeling, and crawling; (vii) frequent stooping and crouching; (viii) occasional left eye peripheral vision; and (ix) frequent handling and fingering.  (R. 51-52).  In response, the VE testified that such an individual could perform Plaintiff's past relevant work as an administrative

assistant and sales manager, consistent with the DOT description for those jobs.[6]  (R. 52).  This hypothetical became the basis for Plaintiff's RFC and led the ALJ to conclude that Plaintiff was not disabled.  (R. 21, 26-27).

*1. Legal Standards*

A claimant's RFC is the most a claimant can do despite the limitations caused by her impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can return to her past relevant work, and if so, "the ALJ will conclude that the claimant is not disabled."  *Phillips*, 357 F.3d at 1238 (citations omitted); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted).  Social Security regulations classify the physical exertion requirements for work as sedentary, light, medium, heavy, and very heavy.  *See* 20 C.F.R. §§ 404.1567, 416.967.  In the end, the responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ is not required to give any special significance to the opinion of medical sources in determining the RFC.  *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (upholding ALJ's RFC finding that accounted for medical opinions not specifically discussed by the ALJ).  The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the Motion, Plaintiff argues that the ALJ's RFC determination is flawed because the ALJ failed to: (i) limit Plaintiff to occasional (as opposed to frequent) reaching, handling, and fingering;

---

[6] In addition, in response to a follow-up hypothetical posed by Plaintiff's counsel based on the ME's handling and fingering limitations, the VE testified that if the hypothetical individual was further limited to only occasional handling and fingering, that individual could not perform Plaintiff's past relevant work but could nonetheless perform other jobs that exist in the national economy, such as bakery worker-conveyor (light with an SVP of 2) and call-out operator (sedentary with an SVP of 2). (R. 52-54, 83-84).

(ii) conduct a function-by-function analysis; and (iii) consider the cumulative effects of Plaintiff's limitations.  (ECF No. 20 at 8-19).  For the reasons discussed below, Plaintiff's arguments are unpersuasive.

*2.  Substantial Evidence Supports the ALJ's Limitations on Handling/Fingering*

Plaintiff argues that regardless of the ALJ's conclusion on whether Plaintiff met the Listings at Step 3, the ALJ nonetheless erred in not including the ME's more restrictive handling limitations into Plaintiff's RFC at Step 4.  (ECF No. 20 at 10).  More specifically, Plaintiff asserts that the ALJ should have limited Plaintiff to: (i) never reaching overhead with her right arm and only occasionally reaching overhead with her left arm; (ii) occasionally reaching forward or laterally with both arms; (iii) occasionally handling with both hands; and (iv) occasionally fingering with both hands.[7]  (ECF No. 20 at 8-9).  As discussed below, however, Plaintiff's argument regarding additional manipulative limitations is not supported by the medical record.

For example, Plaintiff argues that the ALJ erred in not discussing Plaintiff's elevated C-reactive protein, positive rheumatoid factors, positive ANA, and elevated inflammatory markers in determining Plaintiff's RFC.  (ECF No. 20 at 10); *see* (R. 1863) (4/7/21 rheumatologist treatment note reflecting these elevated findings).  Although these findings reflect the symptoms of Plaintiff's diagnosed autoimmune disorders and resulting inflammation, a diagnosis alone does not establish the

---

[7] The undersigned has already found that the ME's opinion regarding Plaintiff's need to use a cane was unsupported by the record.  *See* Section IV.B.2., *supra*, at 14-15.  Because the record does not support this limitation, the ALJ had no reason to include it in the RFC.  *Taylor on Behalf of Estate of Taylor*, 2018 WL 5098961, at *13 (noting that the ALJ is "not required to include findings in the hypothetical that the ALJ has properly rejected as unsupported") (citing *Crawford*, 363 F.3d at 1161); *see also Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 878 (11th Cir. 2013) (same); *Norman v. Comm'r of Soc. Sec.*, No. 8:14-CV-1498-T-30MAP, 2015 WL 4397150, at *8 (M.D. Fla. July 16, 2015) (the ALJ "submits to the expert only those limitations supported by the objective evidence of record") (internal citations omitted).

severity of Plaintiff's impairments or any resulting work-related limitations.  *Bryan*, 2021 WL 707594, at *10; *Wood v. Astrue*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012), *report and recommendation adopted*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005)) (concluding diagnosis alone did not amount to functional limitations that would have changed the outcome of the ALJ's decision).

Plaintiff's argument that the ALJ failed to perform a function-by-function analysis is likewise without merit.  (ECF No. 20 at 10, 15-16).  Although the ALJ must identify an individual's functional limitations or restrictions, *see* 20 C.F.R. §§ 404.1545, 416.945, nothing in the regulations or case law require the ALJ to set out the specifics of her findings on a function-by-function basis.  *Estate of White*, 2020 WL 5351064, at *13; *Abraham v. Colvin*, No. 3:14CV130/LC/MD, 2015 WL 5730154, at *4 (N.D. Fla. Aug. 31, 2015), *report and recommendation adopted*, No. 3:14CV130/LC/MD, 2015 WL 5725780 (N.D. Fla. Sept. 29, 2015) (rejecting the claim that a function-by-function analysis must be in writing where, as here, the ALJ considered all the evidence in detail).  Nor is the ALJ "required to include findings in the hypothetical [to the VE] that the ALJ had properly rejected as unsupported." *Taylor on Behalf of Estate of Taylor*,  2018 WL 5098961, at *13; *Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 883 (11th Cir. 2019) (same); *Denomme*, 518 F. App'x at 878 (same); *Burnham v. Berryhill*, No. 16-CV-63013, 2018 WL 1709714, at *12 (S.D. Fla. Mar. 7, 2018) (same); *see also Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").  Rather, a hypothetical question only needs to include the functional limitations that are supported by the record.  *See McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987).

Here, substantial evidence supports the ALJ's RFC determination limiting Plaintiff to frequent handling and fingering.[8]   For example, Plaintiff's strength was 5/5 in the extremities, and her sensation was intact to pinprick throughout.  (R. 25, 1056, 1059, 1938, 1957-59).  Plaintiff's neck was supple with full range of motion; her motor tone was normal; and there was no weakness.  (R. 25, 1056, 1059, 1067, 1072, 1076, 1079, 1081, 1091, 1102, 1938).  Additionally, while the ME opined that Plaintiff required a cane, the ALJ noted Plaintiff's normal gait.  (R. 25, 1067, 1091); *see* (ECF No. 20 at 3-13) (Plaintiff's silence regarding her cane use).  Moreover, despite Plaintiff's repeated complaints of hand pain and joint stiffness, none of the treatment records reflect manipulative limitations.  *See, e.g.*, (R. 1056) (MHS treatment note reflecting 5/5 strength throughout and normal fine finger movements); (R. 1035-39) (2/27/20 rheumatologist treatment note reflecting no inflammation in the joint linings (synovitis), musculoskeletal deformities, or handling limitations despite complaints of pain in left hand and generalized muscle weakness); (R. 1041-45) (4/2/20 rheumatologist treatment note reflecting complaints of tenderness over right wrist and pain in right shoulder, but no synovitis, musculoskeletal deformities, or handling limitations); (R. 1851) (2/26/21 x-ray of right and left wrists, reflecting no acute fracture or dislocation).  In addition, as the ALJ noted, Plaintiff failed to follow treatment recommendations, which further supports the ALJ's conclusion that Plaintiff's impairments were not as severe as she purported.  (R. 25); *see* (R. 1795) (7/28/20 MHS treatment note reflecting Plaintiff's complaints of pain, but noting Plaintiff's failure to follow-up with endocrinologist and rheumatologist "for past many months"); (R. 1878) (12/4/20 rheumatologist treatment note reflecting that Plaintiff had not followed-up with treatment since April

---

[8] Relatedly, because the undersigned finds no error in the RFC determination, the undersigned need not consider Plaintiff's argument that the ALJ failed to identify and resolve a purported apparent conflict between the VE testimony and the DOT job descriptions for Plaintiff's past relevant work based on the ME's handling and fingering limitations. *See* (ECF No. 20 at 11-12).

2020 and had not taken medications for more than three months); (R. 1876) (12/16/20 rheumatologist treatment note reflecting worsening of Plaintiff's symptoms when Plaintiff was "off systemic treatment for months").

Lastly, Plaintiff argues that the ALJ's RFC failed to account for the cumulative effect of Plaintiff's severe and non-severe impairments.  (ECF No. 20 at 14-18).  According to Plaintiff, the RFC was flawed because it did not consider "the practical effects of [Plaintiff's] intermittent double vision," limitations resulting from Plaintiff's non-severe anxiety, and the effects of her pain and fatigue.  *Id.* at 17, 18.  Plaintiff avers that consideration of the total effect of her impairments would result in additional restrictions on her ability to concentrate, maintain a regular schedule, and remain on task.[9]  *Id.* at 18.  The ALJ's Decision belies Plaintiff's arguments.

Under the Social Security regulations, an ALJ must consider the cumulative effect of all of claimant's impairments in determining whether she is disabled.  *Coleman ex. rel. J.K.C. v. Comm'r of Soc. Sec.*, 454 F. App'x 751, 753 (11th Cir. 2011) (citing *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)).  In the Eleventh Circuit, however, a reference in the ALJ's decision to the claimant's "combination of impairments" is adequate to demonstrate that the ALJ considered the cumulative effect of the claimant's impairments.  *Id.* (quotation and emphasis omitted); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002).

Here, the ALJ's Decision reflects the ALJ's consideration of Plaintiff's impairments and combination of impairments at Steps 2, 3, and 4 of the sequential evaluation.  *See* (R. 18-25).  For example, at Step 3, the ALJ stated that she "considered all of the claimant's impairments individually

---

[9] Relatedly, the ALJ found that Plaintiff's anxiety resulted in a mild limitation in concentration, persisting or maintaining pace.  (R. 19).  As to the other three functional areas of the Paragraph B criteria, the ALJ found Plaintiff had no limitation.  *Id.*  Notably, Plaintiff does not challenge the ALJ's Paragraph B findings.

and in combination," but found no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the listings. (R. 20). In assessing whether Plaintiff's diabetes met or equaled a Listing, the ALJ again stated that she "considered all work-related physical and mental limitations, whether due to the claimant's diabetes mellitus, other impairment(s) or combination of impairments." (R. 21). Similarly, at Step 4, the ALJ "considered all symptoms," including Plaintiff's subjective allegations of pain and the medical evidence, in determining Plaintiff's RFC. (R. 21-26). The ALJ concluded:

> The undersigned did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c).
>
> In conclusion, as to the claimant's functional limitations, the claimant's impairments do cause some limitations. From a physical standpoint, the claimant's treatment notes, minimal objective findings, physical examinations, and activities of daily living support finding the claimant capable of performing a reduced range of light exertional level work.
>
> Accordingly, based on the entire record, including the testimony of the claimant, the undersigned concludes that the evidence fails to support the claimant's assertions of total disability[.]

(R. 25).

These statements are sufficient to show that the ALJ considered the cumulative effect of Plaintiff's impairments. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951-52 (11th Cir. 2014) (ALJ's finding that claimant's impairments or combination of impairments did not meet or equal a Listing sufficed to show that ALJ considered the cumulative effect of claimant's impairments); *Coleman*, 454 F. App'x at 754 (same). Moreover, the ALJ went beyond those statements and meticulously discussed the medical evidence regarding Plaintiff's severe and non-severe impairments, including her anxiety, diabetes, intermittent double vision, pain and fatigue, addressed the effect of those symptoms in the RFC, and properly concluded that Plaintiff was not

disabled. *See* (R. 19) (ALJ's discussion of Plaintiff's anxiety); (R. 22) (ALJ's discussion of Plaintiff's myasthenia gravis); (R. 22-23) (ALJ's discussion of Plaintiff's joint pain and stiffness); (R. 23) (ALJ's discussion of Plaintiff's left eye vision); (R. 23-24) (ALJ's discussion of Plaintiff's diabetes). Here, the ALJ's Decision reflects the ALJ's careful consideration of Plaintiff's impairments, singly and in combination, in determining Plaintiff's RFC.

## V.   RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 20) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 22) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED**.

Within **seven days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on August 18, 2023.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
    All Counsel of Record